STACKHOUSE, DIRECTOR OF AGRICULTURE, *v.* STEELE CANNING COMPANY, INC.

(No. 73277—Decided October 28, 1969.)

Common Pleas Court of Lorain County.

*Mr. Paul W. Brown,* attorney general, and *Mr. Charles S. Rawlings,* for plaintiff.

*Messrs. Horan, Aschenbaugh & Tattersal* and *Mr. L. A. Aschenbaugh,* for defendant.

PINCURA, J. This action was brought by John M. Stackhouse, Director of Agriculture, State of Ohio, under provisions commonly referred to as the Ohio Food, Drug, Cosmetic and Device Law, Section 3715.01 *et seq.,* Revised Code, for an injunction to prevent the shipment and to enjoin any sales of, or delivery for sale and the distribution of, any foodstuffs (primarily mustard greens and turnip greens) carried at or shipped from the defendant's canning plants, Steele Canning Company, Inc., situated in Arkansas.

In May 1968, Marjorie Kirschner, in Lorain, Ohio, purchased a can of uncut mustard greens from a grocery store and upon opening it discovered a portion of a rodent's foot in the can, which was reported to the Lorain Health Board and then to the Director of Agriculture. The state thereafter had its inspectors fan out throughout the state and purchase 191 cans of which 9 cans of the 191 contained foreign animal material which is claimed by the state, to be adulterant and in May 1969 the state picked up an additional 118 cans of the canning company's products, eleven cans contained extraneous matter, principally grass, and in one can a looper was found. The evidence indicates that the Steele Company's plant generally engaged in good manufacturing practices, had good equipment and was cooperative in trying to eliminate objectionable operations such as irregular feeding of raw products on the segregation tables, broken cans, water supply, physical defects of warehouse, all of which the court does not find to be in a dilapidated and unsanitary condition.

The Ohio Food, Drug, Cosmetic and Device Law, Section 3715.52, Revised Code, provides, in pertinent part, as follows:

"The following acts and the causing thereof are hereby prohibited:

"(A) The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is *adulterated* or misbranded;

"(B) The *adulteration* or misbranding of any food, drug, device or cosmetic;

"'* * *'"

Section 3715.59, Revised Code, defines what constitutes "adulterated food" and provides, in pertinent part, as follows:

"Food is adulterated within the meaning of Sections 3715.01 and 3715.52 to 3715.72, inclusive, of the Revised Code, if:

"(A) It bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance, such food shall not be considered adulterated if the quantity of such substance in such food does not ordinarily render it injurious to health.

"'* * *

"(C) It consists in whole or in part of a diseased, contaminated, filthy, putrid, or decomposed substance, or if it is otherwise unfit for food.

"(D) It has been produced, processed, prepared, packed, or held under unsanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered diseased, unwholesome, or injurious to health.

"'* * *'"

The state of Ohio is proceeding under the provisions of Section 3715.53, Revised Code, which reads as follows:

"In addition to the remedies provided and irrespective of whether or not there exists an adequate remedy at law, the director of agriculture or the board of pharmacy is hereby authorized to apply to the court of common pleas in the county wherein any of the provisions of Section

3715.52 of the Revised Code are being violated for a temporary or permanent injunction restraining any person from such violation."

In this case there was testimony that the U. S. Department of Agriculture and the U. S. Food and Drug Act provide grades, inspections and certification for "leafy greens" and other canned goods, and other guidelines that recognize certain tolerances which in a given situation Washington would decide whether or not legal action would be taken based upon product testing and plant conditions, all of which may be relevant but not binding upon the Director of Agriculture of the State of Ohio to adopt or follow such standards. The state of Ohio in this case exercised its discretion to seek an injunction based upon one clear violation of Ohio law and the remaining 19 cans out of 309 cans, which the court does not find adulteration of defendant's products to a substantial degree and therefore could not be considered adulterated beyond the *di minimus* standard, since there is testimony, except in a few cans, that a scientific conclusion beyond standard tolerances would be difficult to reach. The state of Ohio has a right and a duty not only to protect the aesthetic tastes and sensibilities of the consuming public but to prevent greens and foodstuffs being shipped and sold in Ohio that are adulterated and therefore this court will retain jurisdiction for further disposition on or before one year from date.

An injunction is primarily a preventive remedy and looks to the future rather than to the past and is not to be used to punish wrongful acts already committed and should be subject to adaption to changing events. Therefore, it is the considered judgment of this court that an injunction should be granted to prohibit only the acts which are prohibited by statute as to leafy green products against the Steele Canning Company, Inc., and the court retains jurisdiction for the purpose of granting such further relief as may hereafter be appropriate, which can be enforced by due process of this court.

*Judgment accordingly.*